**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**COLUMBIA WELDING SERVICE, INC.**                                    **PLAINTIFF**

**VERSUS**                                      **CIVIL ACTION NO. 2:06cv128-MTP**

**THE BOC GROUP, INC.,** *et al.*                                       **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the court on the Motion for Summary Judgment [36] and Supplemental Motion for Summary Judgment [53] by defendants, The Lincoln Electric Company, The BOC Group, Inc., The ESAB Group, Inc., and Eutectic Corporation (hereinafter the "Manufacturers"), and the Cross-Motion for Summary Judgment [49] by plaintiff, Columbia Welding Service, Inc. (hereinafter "Columbia Welding"). Having considered the parties' motions, the various responses and replies, and the applicable law, the court finds that the Motions for Summary Judgment filed by the Manufacturers should be GRANTED, and that the Cross-Motion for Summary Judgment filed by Columbia Welding should be DENIED.[1]

**FACTS**

Columbia Welding was a small, family-owned retailer of welding supplies/consumables located in Columbia, Marion County, Mississippi, which operated from the 1960's through the early 1990's. Columbia Welding's customers included large and small companies as well as individual purchasers of welding consumables and supplies. Columbia Welding was a retail-only operation and did not design or manufacture welding products, welding rods, or welding consumables, or in any way

---

[1] The parties having consented to disposition by the Magistrate Judge [15], the court is authorized to enter final judgment pursuant to Fed. R. Civ. P. 73 and local rule 73.1.

participate in the labeling of those products. Columbia Welding last purchased or sold welding consumables in 1994.

In early 2002, litigation began throughout the United States, including Mississippi, regarding alleged injuries to welders caused by the breathing of welding fumes. The plaintiffs in the welding rod/fumes litigation claimed that they suffered various ailments, particularly Parkinson's disease and Manganese Induced Parkinsonism, due to their exposure to welding fumes. The plaintiffs in the welding rod/fumes litigation claimed that the welding rods were defective either in their design or in their failure to provide adequate warnings. In furtherance of the welding rod/fumes litigation, welding manufacturers, distributors, and retailers were named as defendants. The first case in which Columbia Welding was named as a retailer-defendant was *Adams v. Lincoln Electric Co.*, filed in Smith County Circuit Court on September 26, 2002. Columbia Welding was subsequently named as a retailer-defendant in close to seventy (70) other cases filed in Mississippi (hereinafter the "underlying litigation"). After the filing of the *Adams* case, Columbia Welding made a demand for defense and indemnity to the Manufacturers.

On or about December 11, 2002, counsel for Columbia Welding, Richard F. Yarborough, Jr., participated in a meeting called by counsel for the Manufacturers. Counsel for all of the defendants in the underlying litigation, including the distributors and retailers, attended the meeting. At the meeting, counsel for the Manufacturers sought the cooperation of the distributor and retailer defendants, including Columbia Welding, in the defense of the underlying litigation. The discussions at the meeting also included what position the Manufacturers would take regarding providing a defense and indemnity to the retailer/distributor defendants. Counsel for Columbia Welding and the other retailer/distributor defendants were advised by the Manufacturers' counsel that it was too early

in the litigation for the Manufacturers to make a decision on the defense or indemnity issue because they did not have proof that the retailer/distributor defendants were actual sellers or "innocent sellers" in any of the underlying litigation.[2]

However, in the *Adams* case, the first welding litigation case filed in Mississippi, the Manufacturers offered to provide a defense to each retailer defendant despite a lack of proof that they were actual sellers in that case.[3] The Manufacturers' March 5, 2003 letter to counsel for Columbia Welding offering a defense for the *Adams* case specifically stated that the Manufacturers would select the firm to represent Columbia Welding; that the fees and costs incurred before acceptance by Columbia Welding remained the sole obligation of Columbia Welding and its insurers; and that if Mr. Yarborough wanted to remain involved in the defense of the *Adams* case, it would be at the sole expense of Columbia Welding.[4] Columbia Welding never accepted the Manufacturers' offer to provide it a defense in the *Adams* case; rather, counsel for Columbia Welding responded to the letter and informed the Manufacturers that the plaintiffs were voluntarily dismissing Columbia Welding

---

[2] No invoices, receipts, or other documentation has been produced by Columbia Welding evidencing that it sold any welding consumables produced, manufactured, or created by the Manufacturers. *See* Deposition of Wayne Elkins, Rule 30(b)(6) Corporate Designee for Columbia Welding, Ex. "H" to Plaintiff's Cross-Motion for Summary Judgment [49-9] at 24, 30; Affidavit of Mr. Yarborough, Ex. "G" to Plaintiff's Cross-Motion for Summary Judgment [49-8]; Plaintiff's Stipulations, Ex. "B" to Defendants' Memorandum in Support of Motion for Summary Judgment [37]. Mr. Elkins testified that Columbia Welding sold welding consumables produced or manufactured by Lincoln, one of the Manufacturers, but could not recall whether it sold welding consumables manufactured by any of the other Manufacturers, but only recalled that their names "sounded familiar." *See* Deposition of Elkins, Ex. "H" to Plaintiff's Cross-Motion for Summary Judgment [49-9] at 17-20.

[3] *See* Exs. "E" and "F" to Defendants' Memorandum [37]. The Manufacturers claimed that this was a "strategic exception to [their] position." *See* Defendants' Memorandum [37] at 3.

[4] *See* Ex. "E" to Defendants' Memorandum [37].

from the *Adams* case.[5] Counsel for Columbia Welding subsequently wrote approximately eighteen (18) letters to counsel for the Manufacturers, asking if they would assume the defense, as outlined in the March 5, 2003 letter in the *Adams* case, in numerous welding rod cases that named Columbia Welding as a retailer defendant.[6] Counsel for the Manufacturers responded to each letter stating that they could not accept or reject Columbia Welding's requests at this time because they did not have sufficient information showing that Columbia Welding was an actual product seller in those cases.[7]

Columbia Welding was eventually dismissed as a defendant in all of the cases encompassing the underlying litigation. Columbia Welding did not pay any amount to settle the cases.

Columbia Welding filed a Complaint and two Amended Complaints against the Manufacturers seeking attorney's fees in the amount of $154,540.89, which represents the difference in the amount of attorney's fees incurred, $432,189.44, and the amount paid by Columbia Welding's insurance carriers, $277,648.55. Columbia Welding's Complaint and Amended Complaints allege claims for promissory estoppel, statutory indemnity, Uniform Commercial Code liability, and common law indemnity. The parties have now moved for summary judgment on these claims.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper "where a party fails to establish the existence of an

---

[5]*See* Ex. "G" to Defendants' Memorandum [37].

[6]*See* Ex. "I" to Defendants' Memorandum [37].

[7]*See* Ex. "C" to Defendants' Memorandum [37].

element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

The court reviews the facts "drawing all inferences in the light most favorable to the nonmoving party." *Solomon v. Walgreen Co.*, 975 F.2d 1086, 1089 (5th Cir. 1992). However, "[i]f the record taken as a whole . . . could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact to be resolved at trial." *Id.*

## ANALYSIS

In considering the Manufacturers' Motions and Columbia Welding's Cross-Motion, the court will address the following claims asserted by Columbia Welding under applicable Mississippi law:

### I. COMMON LAW INDEMNITY

In *Bush v. City of Laurel*, 215 So. 2d 256, 259-60 (Miss. 1968), the court held that "An obligation to indemnify may arise from a contractual relation, from an implied contractual relation, or out of liability imposed by law." The court further stated:

> When one person is required to pay money which another person in all fairness should pay, then the former may recover indemnity from the latter in the amount which he paid, provided the person making the payment has not conducted himself in a wrongful manner so as to bar his recovery.

*Id.*; *see also Hartford Cas. Ins. Co. v. Halliburton Co.*, 826 So. 2d 1206, 1216 (Miss. 2001). Under Mississippi law, there are two "critical" elements Columbia Welding must prove to prevail on a claim of common law indemnity: "(1) The damages which [it] seeks to shift are imposed upon [it] as a result of some legal obligation to the injured person; and (2) it must appear that [it] did not

actively or affirmatively participate in the wrong." *Halliburton Co.*, 826 So. 2d at 1216. In addition, to prevail on a claim of common law indemnity, Columbia Welding must show that "(1) it was legally liable to an injured third party; (2) it paid under compulsion, and (3) the amount paid was reasonable." *Id.* at 1216.

Columbia Welding seeks indemnity from the Manufacturers for the difference in the amount of attorney's fees paid by its insurance carriers and the amount of attorney's fees incurred. Pursuant to the criteria set forth in *Halliburton Co.,* Columbia Welding must show that the damages it seeks to shift are imposed upon it as a result of some legal obligation to the injured person. *Id.* However, Columbia Welding is not "legally liable" to an injured person because it is not liable to any of the plaintiffs in the underlying litigation. Columbia Welding was dismissed from the underlying litigation without having to make any settlement payment. *See Maryland Cas. Co. v. R.H. Lake Agency, Inc.*, 331 F. Supp. 574, 579 (N.D. Miss. 1971) (stating that plaintiff must show that he was legally liable to the injured party in order to recover on a claim for common law indemnity; plaintiff's potential liability to injured party had he not settled is insufficient to recover under this theory).

Even if the court were to consider the "injured" or "third" party to be Columbia Welding's attorney, Mr. Yarborough, Columbia Welding is not "legally liable" for any damages/attorney's fees since Mr. Yarborough informed Columbia Welding that it would not be responsible for any attorney's fees not paid by its insurance carriers. Wayne Elkins, the corporate designee for Columbia Welding, offered the following testimony during his deposition:

> Q. At any time did Mr. Yarbrough (sic) tell you that you wouldn't have to pay for any portion not covered by the insurance companies?
> A. Yes.
>
> Q. When did he tell you that?

> A. I don't know. About six months to a year into the process.
>
> Q. Okay. And at that point, you had information that – or an expectation that the carriers were going to provide some monies for the defense; is that correct?
> A. Correct.
>
> Q. Okay. And it was your understanding that Columbia Welding would not be responsible for any difference?
> A. Right.
>
> Q. Okay. Did Mr. Yarbrough (sic) tell you why he would agree to do that?
> A. No.
>
> Q. Okay.
> A. In all fairness, I didn't ask.
>
> Q. I understand. And after that, is it fair to say that Columbia Welding Service was not – I don't want to say not concerned, but not worried about how to pay the difference since you weren't going to have to pay it; is that correct?
> A. Right.
>
>                 . . .
>
> Q. (By Mr. Yarborough) Now, you were asked a number of questions about the amount that is being sought in this lawsuit and you testified about your company not being looked to for payment of that; is that correct?
> A. Correct.

Elkins' Deposition, Ex. "A" to Defendants' Memorandum [37], at 43:24- 45:1; 73:23 - 74:3.

Columbia Welding's claim for common law indemnity also fails because it has not paid any damages at all (to either the plaintiffs in the underlying litigation or to Mr. Yarborough), much less under compulsion. *See Halliburton Co.*, 826 So. 2d at 1216; *Sw. Miss. Elec. Power Ass'n v. Harragill*, 182 So. 2d 220, 223 (Miss. 1966). The amount which Columbia Welding seeks to recover, $154,540.89, the difference in the amount of legal expenses incurred by its attorney and not paid

Columbia Welding's insurers, has not been paid by anyone,[8] nor–according to the undisputed testimony of Mr. Elkins of Columbia Welding–is Columbia Welding even obligated to pay the additional fees.[9]

For the reasons stated above, this court concludes that there are no genuine issues of material fact relating to Columbia Welding's claim for common law indemnity, and therefore, the Manufacturers are entitled to judgment as a matter of law on this theory of recovery.[10]

## II. **STATUTORY INDEMNITY**

Columbia Welding also demands statutory indemnity under Miss. Code Ann. § 11-1-63(g)(i), which provides:

> The manufacturer of a product who is found liable for a defective product pursuant to subsection (a) shall indemnify a product seller for the costs of litigation, any reasonable expenses, reasonable attorney's fees and any damages awarded by the trier of fact unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; the seller altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages

---

[8] *See* Plaintiff's Stipulations, Ex. "B" to Defendants' Memorandum [37], at ¶ 7.

[9] *See* Elkins' Deposition, Ex. "A" to Defendants' Memorandum [37], at 43:24- 45:1; 73:23 - 74:3.

[10] The Manufacturers also make the argument that Columbia Welding's common law indemnity claim is precluded by operation of Miss. Code Ann. § 11-1-63(g), discussed below, which provides a mechanism for a seller to seek indemnity against a manufacturer in a products liability action. The Manufacturers cite *Tuggle v. Williamson*, 450 So. 2d 93, 95 (Miss. 1994), for the proposition that this statute precludes Columbia Welding from making claims under a common law indemnity theory. *See* Defendants' Memorandum in Support of Supplemental Motion [54-1] at 7-8. Because the court finds that the Manufacturers are entitled to judgment as a matter of law on the grounds stated above, the court does not reach the issue of whether Columbia Welding is precluded from bringing a common law indemnity claim based on Miss. Code Ann. § 11-1-63(g).

>       is sought; the seller had actual knowledge of the defective condition
>       of the product at the time he supplied same; or the seller made an
>       express factual representation about the aspect of the product which
>       caused the harm for which recovery of damages is sought.

In order for Columbia Welding to receive statutory indemnity from the Manufacturers, it must prove two essential components of § 11-1-63(g)(i). First, based on the clear language of the statute, Columbia Welding must show that the Manufacturers were found liable for a defective product. It is undisputed that the Manufacturers have not been found liable for a defective product in the underlying litigation.[11] Further, there is no evidence that any of the plaintiffs in the underlying litigation were exposed to, or injured by, the Manufacturers' products.[12]

Second, Columbia Welding must show that it was a "product seller" of the allegedly defective product manufactured by the Manufacturers. Columbia Welding has stipulated that it has no independent proof that a plaintiff in the underlying litigation was injured as a result of exposure to welding consumables sold by Columbia Welding.[13]

Accordingly, Columbia Welding's claim for statutory indemnity fails as a matter of law.

### III. **UNIFORM COMMERCIAL CODE LIABILITY**

---

[11]*See* Plaintiff's Stipulations, Ex. "B" to Defendants' Memorandum [37], at ¶ 5. Columbia Welding makes the argument that since two of the Manufacturers, Lincoln Electric and The BOC Group, were found liable in an unrelated welding rod case filed in Illinois, the Manufacturers have been found liable for "a defective product" for purposes of this case. *See* Plaintiff's Memorandum [51] at 17-18. Columbia Welding cites to no authority for the proposition that the verdict in an unrelated case in another jurisdiction has any impact on or relevance to the case before the court and/or the underlying litigation. Moreover, the Manufacturers point to a number of cases wherein no liability was established. *See* Defendants' Rebuttal [56] at 5.

[12]*See* Plaintiff's Stipulations, Ex. "B" to Defendants' Memorandum [37], at ¶ 4.

[13]*See* Plaintiff's Stipulations, Ex. "B" to Defendants' Memorandum [37], at ¶ 3.

In order to establish a claim for breach of implied warranty of merchantability under Miss. Code Ann. § 75-2-314, "a plaintiff must prove the goods had a defect which caused plaintiff's damage." *Farris v. Coleman Co.*, 121 F. Supp. 2d 1014, 1017 (N.D. Miss. 2000). As previously stated, the Manufacturers have not been found liable for a defective product in the underlying litigation, and there is no evidence that any of the plaintiffs in the underlying litigation were exposed to, or injured by, the Manufacturers' products. Therefore, Columbia Welding's claim for breach of implied warranty of merchantability fails as a matter of law.[14]

Columbia Welding's claim for breach of implied warranty of fitness for a particular purpose under Miss. Code Ann. § 75-2-315 likewise fails because it has failed to put forth sufficient summary judgment evidence that the plaintiffs in the underlying litigation purchased welding consumables from Columbia Welding that were manufactured by the Manufacturers, much less that the products were not used for their ordinary purpose.[15]

The court rejects Columbia Welding's claim that the mere tender of defense under Miss. Code Ann. § 75-2-607(5)(a) entitles it to attorney's fees. Rather, a finding of liability is a prerequisite for a claim for indemnity based on a breach of warranty claim. *See Curry v. Sile Distribs.*, 727 F. Supp. 1052, 1055 (N.D. Miss. 1990). As previously noted, there has been no finding of liability against Columbia Welding (as it was voluntarily dismissed from the underlying litigation) or the Manufacturers in the underlying litigation.

For the reasons set forth above, this court concludes that there are no genuine issues of

---

[14]*See supra*, footnotes 11, 12, and 13.

[15]*See* Plaintiff's Stipulations, Ex. "B" to Defendants' Memorandum [37], at ¶¶ 2, 3, and 4.

material fact relating to Columbia Welding's claims under the UCC and, therefore, these claims fail as a matter of law.[16]

### IV. PROMISSORY ESTOPPEL/DETRIMENTAL RELIANCE

In order to establish a claim for equitable estoppel, a party must show: "(1) that he has changed his position in reliance upon the conduct of another and (2) that he has suffered detriment caused by his change of his position in reliance upon such conduct." *PMZ Oil Co. v. Lucroy*, 449 So. 2d 201, 206 (Miss. 1984). However, "the law does not regard estoppels with favor, nor extend them beyond the requirements of the transactions in which they originate." *PMZ Oil*, 449 So. 2d at 206 (quoting *McLearn v. Hill*, 177 N.E. 617 (Mass. 1931)). Furthermore, the doctrine of equitable estoppel "requires reasonableness." *Solomon v. Walgreen Co.*, 975 F.2d 1086, 1091 (5th Cir. 1992).

In its Second Amended Compliant [44] and Memorandum in Support of its Cross-Motion for Summary Judgment [51], Columbia Welding asserts that it changed its position in reliance on the conduct of the Manufacturers based on the meeting held on or about December 11, 2002,[17] and the March 5, 2003 letter from the Manufacturers regarding the *Adams* case. At the December 11, 2002 meeting, counsel for Columbia Welding and the other distributors were advised that it was too early in the litigation for the Manufacturers to make a decision on the defense or indemnity issue.[18]

The March 5, 2003 letter from the Manufacturers offering a defense to Columbia Welding

---

[16]Because the court finds that the Manufacturers are entitled to judgment as a matter of law on the grounds stated above, the court does not reach the issue of whether Columbia Welding's UCC claims are time-barred by Miss. Code Ann. § 75-2-725.

[17]The December 11, 2002, meeting is discussed in more detail in the "Facts" section above, pages 2-3.

[18]*See* Affidavit of Mr. Yarborough, Ex. "G" to Plaintiff's Cross-Motion for Summary Judgment [49-8], at ¶ 14.

for the *Adams* case specifically stated that the Manufacturers would select the firm to represent Columbia Welding; that the fees and costs incurred before acceptance by Columbia Welding remained the sole obligation of Columbia Welding and its insurers; and that if Mr. Yarborough wanted to remain involved in the defense of the *Adams* case, it would be at the <u>sole expense of Columbia Welding</u>.[19]  Columbia Welding never accepted the Manufacturers' offer to provide it a defense in the *Adams* case; rather, counsel for Columbia Welding responded to the letter and informed the Manufacturers' counsel that the plaintiffs were voluntarily dismissing Columbia Welding from the *Adams* case.[20]

The letter further stated, "In the event we are named in additional filings, we will be in touch with you to discuss the content of your March 5 letter."[21]  Counsel for Columbia Welding subsequently wrote approximately eighteen (18) letters asking if the Manufacturers would assume the defense, as outlined in the March 5, 2003 letter in the *Adams* case, in numerous welding rod cases wherein Columbia Welding was named as a defendant.[22]  Counsel for the Manufacturers responded to each letter stating that they could not accept or reject Columbia Welding's requests at this time because they did not have "sufficient information about the welding products the plaintiffs in these cases allegedly used or to which they claim exposure."[23]

Based on this undisputed evidence before the court, it is clear that Columbia Welding did not

---

[19]*See* Ex. "E" to Defendants' Memorandum [37].

[20]*See* Ex. "G" to Defendants' Memorandum [37].

[21] *See* Ex. "G" to Defendants' Memorandum [37].

[22] *See* Ex. "I" to Defendants' Memorandum [37].

[23]*See* Exs. "C" and "D" to Defendants' Memorandum [37].

change its position in reliance on the representations of the Manufacturers. Even if Columbia Welding had changed its position in reliance upon the representations of the Manufacturers, such reliance was neither reasonable, nor justified. *See supra, Solomon*, 975 F.2d at 1091. Moreover, Columbia Welding did not suffer any real detriment as a result of any alleged change in position.

In their March 5, 2003 letter to Mr. Yarborough, the Manufacturers made it clear that if they were to assume the defense of Columbia Welding in the *Adams* case, the Manufacturers would select the attorneys–not Columbia Welding– and that any fees charged by Mr. Yarborough must be paid by Columbia Welding. It is undisputed that Columbia Welding did not accept the Manufacturers' offer to defend it in the *Adams* case.

Likewise, when Columbia Welding wrote the Manufacturers requesting a defense in the other cases involved in the underlying litigation, the Manufacturers wrote back deferring the question until more information was known, and did not assume the defense of Columbia Welding. Columbia Welding's position that it relied upon representations made by the Manufacturers and thus expected the Manufacturers to pay the fees charged by Mr. Yarborough lacks sufficient factual support, is unreasonable, and fails as a matter of law.

## **CONCLUSION**

This court concludes that there are no genuine issues of material fact relating to the various theories of recovery urged by Columbia Welding and that Columbia Welding's claims must fail as a matter of law.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Manufacturers' Motions for Summary Judgment [36] [53] are hereby GRANTED, and that Columbia Welding's Cross-Motion for Summary Judgment [49] is hereby DENIED. Columbia Welding's claims against the

Manufacturers are dismissed with prejudice.

      A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

      SO ORDERED AND ADJUDGED this the 13th day of July, 2007.

                                  s/ Michael T. Parker
                                  United States Magistrate Judge